IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Patrick Brown,                                                    Case Nos. 3:23-cv-00682
                                                                          and 3:19-cr-00392-3
          Petitioner-Defendant,

      v.                                                    **ORDER**

United States of America,

          Respondent-Plaintiff.


The Defendant has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or

Correct Sentence. (Doc. 281). The government opposes the Motion (Doc. 287), and the

Defendant has filed a reply (Doc. 292).

For the reasons that follow, I deny Defendant's Motion.

## Background

Defendant is currently serving a 170-month prison sentence following his guilty plea to

one count of conspiracy to possess with the intent to distribute, and distribution of, controlled

substances in violation of 21 U.S.C. § 846. (*See* Doc. 1, pgID 1–22).

From April 2017 through October 2018, Defendant actively distributed and sold

narcotics—by himself and through his network of distributors who helped him reach a wider

illegal market. (Doc. 211, ¶ 12). He admitted that at least 54 grams of heroin and 4,300 grams of

cocaine either were sold by him or were directly attributable to him and reasonably foreseeable

within the conspiracy. (Doc. 134, ¶ 23(D)).

In 2017 and 2018, the U.S. Drug Enforcement Administration used a confidential source

to make eight different controlled buys of cocaine from Defendant, ranging from a few grams to

over 100 grams. (Doc. 211, ¶¶ 14–15). Then, in May 2018, ATF agents obtained judicial approval to intercept phone calls and text messages from Defendant's multiple cell phones for 30 days. (Doc. 251, at 14:2–14). In that short timeframe, Defendant, through his missives, revealed the identities of at least three different cocaine suppliers and over ten different downstream distributors (*Id.* at 15:20–17:16).

From these phone calls, law enforcement learned that Defendant ordered a kilogram of cocaine from his co-conspirator supplier. (*Id.* at 19:24 – 20:11). Law enforcement intercepted and arrested Defendant's supplier, thus stopping that cocaine delivery. (*Id.*).

Unchastened, and in need of supply, the Defendant pressed on. He arranged to purchase a different bulk shipment of cocaine from a different supplier only days later. (*Id.* at 16:11–17:6). Defendant travelled personally to Cleveland to pick up 250 grams of cocaine and drive it back to his operations in Sandusky. (*Id.* at 17:2–6; 24:22–25:3). The police intercepted him as well. (*Id.*). They seized the cocaine but released Brown. (Doc. 211, pgID 1521).

Not counting his blessings after this run-in, the Defendant persisted. A few months later, police stopped Defendant in his vehicle again. (Doc. 251, at 22:21 – 23:8). This time, the Defendant abandoned his vehicle and ran from the police, jettisoning bags of cocaine from his pants as he fled. (*Id.*).

Police executed search warrants that same day, at Defendant's home and his mother's home. Police found more cocaine, heroin, four cell phones, four guns, ammunition, digital scales, a narcotics press, and over $4,600 in cash. (Doc. 211, pgID 1521).

The U.S. Attorney for the Northern District of Ohio indicted Defendant, his upstream suppliers, and his downstream distributors on June 26, 2019. (Doc. 1). Defendant entered into a plea agreement with the government on July 8, 2020. (Doc. 134).

The Court held a change of plea hearing before accepting Brown's agreed guilty plea.[1] The Court established and found that the Defendant was competent to testify at the hearing. (Doc. 204, at 11:20–13:8). The Court then inquired about the plea agreement, asking the Defendant if he reviewed the agreement with his lawyer, if he understood the terms of the agreement, and if his lawyer answered all of his questions about the agreement. He answered in the affirmative to each query. (*Id.* at 13:9–19).

The Court then reviewed each and every page of the plea agreement with the Defendant, asking at the end of each section if the Defendant understood. *See* Fed. R. Crim. P. 11(b). Each time, the Defendant responded, "yes." (*Id.* at 13:20–40:17).

This review of the plea agreement included the Defendant's agreement to waive most of his rights to an appeal:

> THE COURT: If we go on, paragraph 21 next on Page 6, Waiver of Appeal and Post-Conviction Attack. Waiver is a fancy legal word, another one of those words, and it means giving up. And what you're giving up here are certain rights on appeal if you should choose to appeal. And what you're giving up are rights except those referenced in subparagraph A and B and C. And you'll see you reserve the right to appeal any punishment in excess of the statutory maximum, any sentence to the extent it exceeds the maximum of a guideline range found applicable by the Court, or C, this Court's determination of your criminal history. You are keeping the ability to waive any disagreement you may have with those three findings, but everything else you're giving up, do you understand, for appeal?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Any questions about that paragraph?
>
> THE DEFENDANT: No, Your Honor.

---

[1] On April 29, 2020, I requested reassignment of this case to a different judge for the purpose of the jury trial. (Doc. 117). Therefore, the July 8, 2020 change-of-plea hearing (Doc. 204) and the November 12, 2020 sentencing hearing (Doc. 251) were both before the Honorable Jack Zouhary, District Judge for the Northern District of Ohio, Western Division. Following sentencing, Judge Zouhary returned the case to me for any further proceedings, including post-conviction motions and petitions. (Doc. 276).

3

(*Id.* at 26:22–27:14). The Court again asked if Defendant had any other questions about his guilty plea or his plea agreement. The Defendant said, "no." (*Id.* at 40:15–17). The Defendant then initialed each page of the plea agreement to indicate that he had read, that the Court had discussed, and that he agreed with each section. (*Id.* at 40:25–41:16).

The Court found, based on Defendant's answers, that he made a knowing, intelligent, and voluntary waiver of certain constitutional rights, including his rights to appeal. (*Id.* at 42:3–18). The Court accepted his guilty plea and entered a finding of guilty. Toward the end of the hearing, the Court inquired a final time if the Defendant had any questions at all about his case, his plea agreement, or his plea. The Defendant again responded, "no." (*Id.* at 43:5–7).

At his subsequent sentencing hearing on November 12, 2020, Defendant objected to the application of a "leadership role" sentencing guideline enhancement in the Presentence Investigation Report ("PSR"). (Doc. 251, at 7:1–8:2; *see also* Doc. 219, pgID 1565–67). On that point, the government presented the testimony of the investigating DEA special agent. (Doc. 251, at 10:9–43:9). The agent further established and explained Defendant's leadership role in the cocaine conduits leading into the Sandusky community. (*Id.*).

Following the agent's testimony, the Court found that the four-level upward adjustment to the guidelines was appropriate. (*Id.* at 46:19–22). The Court said that it could rely on the PSR alone for its application of the leadership role adjustment, and the agent's testimony only further justified that finding. (*Id.* at 48:5 – 19).

The Court also applied a three-level downward adjustment for acceptance of responsibility. (*Id.* at 55:8–10). This resulted in a final total offense level of 33, a criminal history category of IV, and a guideline range of 188 to 235 months. Over objection from the

government, the Court imposed a downward variance of that range, sentencing the Defendant to 170 months followed by a four-year term of supervised release. (*Id.* at 49:3–13)

Defendant, through his appellate counsel, appealed his conviction, raising two claims for ineffective assistance of trial counsel.[2] (Doc. 281, pgID 2096). Defendant's appellate counsel did not appeal the Court's imposition of the leadership role sentencing enhancement. (*Id.*, pgID 2098).

Defendant now petitions under 28 U.S.C. § 2255 to reduce or vacate his sentence.

### Legal Standard

Under 28 U.S.C. § 2255, a Defendant may move to reduce or vacate his prison sentence if "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in the excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" Thus, "[t]o prevail under section 2255, [Defendant] must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990).

"A petitioner seeking to vacate [or reduce] a sentence pursuant to § 2255 has the burden of sustaining his contentions by a preponderance of the evidence." *McNeil v. United States*, 72 F. Supp. 2d 801, 804 (N.D. Ohio 1999) (Economus, J.) (citing *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980)). "The Supreme Court consistently has determined that 'to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (quoting *United*

---

[2] Defendant argued on appeal that his counsel was ineffective by (1) failing to timely make a motion to suppress evidence and (2) failing to adequately advise him about the consequences of his plea agreement.

*States v. Frady*, 456 U.S. 152, 166 (1982)). An evidentiary hearing on the petition is not required if "the record conclusively shows that the petitioner is entitled to no relief." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007).

<u>**Discussion**</u>

Defendant claims ineffective assistance of his appellate counsel.[3] Specifically, he claims that appellate counsel failed to appeal this Court's application of the leadership role sentencing enhancement. (Doc. 281, pgID 2098).

"To establish ineffective assistance of counsel, it must be shown that counsel's performance was [1] deficient and [2] that the deficient performance prejudiced the defense so as to render the [legal proceedings] unfair and the result unreliable." *Sullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

### 1.   Appellate Counsel's Performance

"A reviewing court's scrutiny of counsel's performance is highly deferential." *Id.* (citing *Strickland, supra*, 466 U.S. at 689). A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland, supra*, 466 U.S. at 690. I must then determine whether those acts or omissions were "outside the wide range of professionally competent assistance." *Id.*

But there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* In other words, a defendant "must overcome the presumption that, under the circumstances, the challenged action

---

[3] Defendant's initial Motion was unclear on whether he was claiming ineffective assistance by his trial counsel or his appellate counsel. (Doc. 281, pgID 2098). Defendant's reply brief, however, makes clear that the instant Motion concerns his appellate counsel. (Doc. 292, pgID 2186).

'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). My job is not to second-guess counsel's strategies through the distorting lens of hindsight. *Id.*

Appellate counsel here exercised reasonable professional judgment. Counsel's decision not to appeal the leadership role enhancement is within the wide range of professionally competent assistance. In his plea agreement, Defendant waived his right to appeal the application of a sentencing guideline enhancement. Under that agreement, the Defendant waived all his appellate rights other than appeals of "(a) any punishment in excess of the statutory maximum; (b) any sentence to the extent it exceeds the maximum of the Guidelines sentencing range found applicable by the Court; or (c) the Court's determination of Defendant's Criminal History Category."[4] (Doc. 134, ¶ 21).

Thus, counsel's decision not to appeal was an exercise in sound legal judgment—that Defendant could not, in good faith, appeal the leadership role enhancement in light of his agreement. *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001) ("[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit.").

In his reply, Defendant argues that the Fed. R. Crim. P. 11 plea colloquy did not ensure he understood the scope of his appeal waiver. (Doc. 292, pgID 2187–89). I disagree. The government gave Defendant a copy of the draft plea agreement; he read the plea agreement; he reviewed the plea agreement with his attorney; his attorney answered all of his questions regarding the plea agreement; the Court painstakingly reviewed each section of the plea agreement with the Defendant; the Court asked if the Defendant understood his appeal waiver; the Court asked if the Defendant had any questions about his appeal waiver; the Court instructed the Defendant to review and initial each page

---

[4] The agreement noted that Defendant retained his ability to raise challenges of ineffective assistance of counsel and prosecutorial misconduct. (Doc. 134, ¶ 21).

of the agreement, indicating he read and agreed with it; and after all of that, the Court again asked if the Defendant had any questions at all about his case or his plea agreement.

Within this avalanche of procedural safeguards, Defendant plucks out one sentence of the plea hearing transcript that he seems to argue inserted ambiguity. This is not enough. The Defendant acknowledged at every turn that he understood his plea agreement and had no questions about his appeal rights. Had there been *any* indication to the contrary, the Court—and I am sure the government—would not have accepted that agreement and would have terminated the change of plea hearing, proceeding instead to trial.

Regardless, it was also within the realm of sound legal strategy for Defendant's appellate counsel not to raise this plea colloquy issue and instead focus Defendant's appellate efforts on other stronger legal issues. *See Winters v. Miller*, 274 F.3d 1161, 1167 (7th Cir. 2001) ("Appellate counsel's performance is deficient if counsel fails to appeal an issue that is both obvious and clearly stronger than one that was raised. It is not necessary, however, that appellate counsel raise every non-frivolous issue under the sun.") (internal citation and quotation marks omitted).

Therefore, I conclude that appellate counsel's performance was not deficient under the *Strickland* standard.

## 2. Prejudice

The fact that Defendant has not shown his appellate counsel's performance to be deficient is alone dispositive of this Motion. However, I also conclude there would have been no prejudice in any case.

"[T]o prove that counsel's performance was prejudicial, there must be 'a reasonable probability that, but for counsel's unprofessional errors, the rest of the proceeding would have been different.'" *Davian v. United States*, 2015 WL 6758225, at *2 (N.D. Ohio) (Gaughan, J.) (quoting *Strickland, supra*, 466 U.S. at 694). A reasonable probability is one that is "sufficient to

undermine confidence in the outcome." *Strickland, supra*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

As the Court concluded at the sentencing hearing, the government more than adequately established Defendant's leadership role in the drug conspiracy. The PSR and the ATF agent's testimony made clear that the Defendant occupied a higher-up position within the cocaine-ring hierarchy. He had a network of at least ten known distributors working for him to move his cocaine. He had multiple stash houses and cell phones, and he had more guns than he had hands to wield them.

On top of all of this, the sheer amount of cocaine—over four kilograms of narcotics moving into a relatively small northern Ohio community—indicated that he was not just some corner dealer. Even if his appellate counsel chose to appeal the application of the leadership role enhancement, I find that there is not a substantial likelihood that the Sixth Circuit would have reached a different result from the district court.

### Conclusion

The purpose of the Rule 11 colloquy is to ensure that a criminal defendant fully understands the consequences of his plea, what he is getting, and what he is giving up. That is exactly what happened here. Thus, Defendant's appellate counsel made no error and Defendant suffered no prejudice. It is hereby ORDERED THAT:

1. Defendants Motion under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Doc. 281) be, and the same hereby is, denied.

2.  I decline to issue a 28 U.S.C. § 1915(a)(3) certificate of appealability. As explained

above, the Defendant has not made a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

SO ORDERED.

*/s/ James G. Carr*
Sr. U.S. District Judge